UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

OBERON SECURITIES, LLC,                               :

                Plaintiff,                         :       <u>COMPLAINT</u>

   -against-                                          :

PRIMARY HEALTH PROPERTIES PLC and       :
PHP PROPERTY MANAGEMENT SERVICES
LIMITED,                                                          :

                Defendants.                      :
---------------------------------------------------------------x

      Plaintiff Oberon Securities, LLC ("Oberon" or "Plaintiff"), by and through its undersigned counsel, as and for its complaint against defendants Primary Health Properties PLC ("PHP") and PHP Property Management Services Limited ("PHP Property Mgt.") (collectively, "Defendants"), alleges as follows:

      1.     On February 6, 2025, Defendants executed an "M&A Engagement Agreement" with Oberon pursuant to which Oberon agreed to identify one or more potential Transaction counterparties to Defendants in exchange for compensation described in the written agreement. That compensation would only be paid in the event that Defendants completed a Transaction (as defined in the agreement) with parties identified by Oberon. On February 7, 2025, Oberon identified to Defendants a Transaction through which Defendants could acquire a substantial portfolio of real estate assets from Assura PLC ("Assura").

      2.     Later in February 2025, Mr. Mark Davies ("Davies"), Chief Executive Officer of PHP, acknowledged in writing that Oberon had introduced to PHP the potential transaction to acquire a substantial portion of Assura's real estate assets. Beginning that month and continuing over the next five months, PHP first analyzed the acquisition of only certain real estate assets

owned by Assura, launched a takeover bid for all of Assura, conducted additional diligence concerning Assura's assets, and made an amended, higher bid for Assura.

3. In August 2025, the vast majority of Assura's shareholders accepted PHP's offer to acquire Assura, PHP's offer became unconditional, and more than 92% of Assura's shares were tendered to PHP before the end of August. As of the filing of this complaint, PHP has either completed or nearly completed the acquisition of all remaining Assura ownership shares. Thus, PHP has acquired all of Assura's real estate assets, including the portfolio of such assets introduced as a potential transaction to PHP by Oberon.

4. In August 2025, Oberon reached out to PHP to coordinate with PHP concerning the payment of compensation owed to Oberon under the M&A Engagement Agreement. Instead of coordination, Davies falsely denied that the M&A agreement even existed. To date, PHP has not paid any compensation to Oberon under the terms of the M&A Engagement Agreement, claiming that the terms of the M&A Engagement Agreement do not apply to the acquisition of Assura's real estate assets via the successful tender offer.

5. Oberon brings this action to collect the compensation due and owing under the terms of the M&A Engagement Agreement. Those terms require a cash payment from PHP to Oberon equal to 1% of the Transaction Value (as defined in the agreement) upon the closing of the Transaction. Based upon public filings made by PHP and Assura, the estimated Transaction Value associated with PHP's acquisition of Assura and its real estate assets exceeds $4 billion. Therefore, the cash payment required to be paid by PHP to Oberon under the M&A Engagement Agreement exceeds $40 million.

6. In the unlikely event that this Court finds that the M&A Engagement Agreement does not apply to PHP's acquisition of Assura's real estate assets via tender offer, Oberon seeks *quantum meruit* compensation for the services performed by Oberon for the benefit of PHP.

## PARTIES

7. Oberon is a limited liability company organized under the laws of Delaware, with its principal place of business in New York, New York.

8. PHP is a public limited company organized under the laws of the United Kingdom, with its principal place of business in London, U.K.

9. PHP Property Mgt. is a private limited company organized under the laws of the United Kingdom and an affiliate of PHP, with its principal place of business in London, U.K.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332 because there is complete diversity of citizenship between Plaintiff and Defendants.

11. This Court has personal jurisdiction over Defendants because Paragraph 5 of the M&A Engagement Agreement expressly states that Plaintiff and Defendants "irrevocably" submit to the jurisdiction of this Court concerning any suit arising out of or relating to the Agreement.

12. Venue is proper in this Court because Oberon's principal place of business is located in New York, New York and Paragraph 5 of the M&A Engagement Agreement states: (a) this Complaint may be brought in this Court; and (b) Defendants waive any defense of improper venue concerning such an action brought in this Court.

FACTS COMMON TO ALL CLAIMS FOR RELIEF

13. During the period from November 2024 through January 2025, an Oberon representative communicated separately with both PHP and Assura to obtain information about the potential interest of these companies in purchases or sales of real estate assets. During those communications, Oberon learned that Assura might be interested in selling a significant portion of its real estate assets and that PHP might be interested in acquiring additional real estate assets.

14. At the end of January 2025, Oberon sent a proposed fee agreement to Davies and PHP concerning the possible acquisition of a portfolio of healthcare real estate assets valued at $200-$250 million. Oberon and PHP exchanged emails on February 5th and 6th concerning the terms of the proposed fee agreement. Among the terms requested by PHP *and rejected* by Oberon was a request by PHP to make the fee payable to Oberon contingent on Oberon's substantial participation in the completion of a transaction. Instead, Oberon insisted – and PHP agreed – that Oberon's fee would be earned upon: (a) the introduction of a transaction counter-party; and (b) the closing of a Transaction (as defined in the agreement, specifically including "merger") by PHP with the transaction counter-party identified by Oberon.

15. On February 6, 2025, Davies executed the M&A Engagement Agreement in his capacity as PHP's CEO. The terms of the agreement defined the parties to the agreement as: (a) Oberon; and (b) PHP Property Mgt. and all of its affiliates (which included PHP, the entity executing the agreement.) Upon receiving the execution copy from PHP, including the hand-written date of February 6, 2025 on the agreement, Oberon counter-signed the M&A Engagement Agreement on February 7, 2025.

16. That same day, Oberon sent an email to PHP identifying Assura as a transaction counterparty for PHP concerning a specific portfolio of real estate assets owned by Assura.

4

According to emails sent by Davies to Oberon, Davies immediately instructed a team of PHP employees to analyze the specific portfolio of real estate assets identified by Oberon over the weekend of February 8-9, 2025.

17. During the period from February 7th through February 13th, Oberon communicated regularly with both PHP and Assura regarding the potential acquisition of Assura real estate assets by PHP. At Davies's instruction, Oberon inquired whether Assura would be willing to sell a larger percentage of its real estate assets to the potential acquiror identified by Oberon. Assura confirmed its willingness to consider a larger sale of assets and requested more information about that potential acquiror. At that time, Oberon did not identify PHP as the potential acquiror of those real estate assets to Assura based on directions provided by Davies.

18. On February 14, 2025, Kohlberg Kravis Roberts & Co. and Stonepeak Partners ("KKR/Stonepeak") announced a takeover bid to acquire Assura via a tender offer for 100% of Assura's common stock.

19. On February 18, 2025, Davies informed Oberon via email that PHP would no longer pursue a separate acquisition of a portion of Assura's real estate assets. In that same email, Davies acknowledged that Oberon had introduced to PHP the opportunity to acquire the portfolio of real estate assets from PHP.

20. On March 10, 2025, PHP announced a takeover bid to acquire Assura (and all of its real estate assets) via a tender offer for 100% of Assura's common stock. When an Oberon representative reached out to Davies to discuss PHP's tender offer for Assura, Davies initially stated that certain legal restrictions surrounding the tender offer prohibited Davies from discussing the offer with Oberon. In response, Oberon reminded Davies (as he had admitted in

5

February 2025) that Oberon had introduced a potential transaction to acquire Assura real estate assets to Davies and PHP.

21. Beginning on March 15, 2025 and continuing through July 2025, Davies engaged in a series of communications with Oberon concerning the competing tender offers for Assura made by PHP and KKR/Stonepeak. These communications took the form of both and telephone conversations, some of which were recorded by the Oberon representative. In these communications, Davies shared confidential, non-public information concerning the PHP tender offer with Oberon. For example, in July 2025, Davies suggested to the Oberon representative that Oberon solicit institutional investors to purchase PHP common stock "to support the share price so KKR can't knick the deal from us." Oberon did not take any action in response to Davies' suggestion.

22. Also during July 2025, Davies discussed information with Oberon concerning a review of a PHP-Assura merger by the Competition and Markets Authority ("CMA") of the U.K. Government, including a non-public meeting between Davies and CMA representatives. At the end of July 2025, Davies took preliminary steps to arrange an in-person meeting with Oberon representatives in New York in early September 2025, when Davies planned to visit New York on other business.

23. On August 12, 2025, PHP announced that its tender offer for Assura was accepted by the majority of Assura shareholders and had become unconditional. Oberon sent an email congratulating Davies on the successful acquisition of Assura and inquiring about the date by which the CMA would complete its review of the merger.

24. On August 18, 2025, Oberon sent a follow-up email to Davies concerning the remaining steps for completion of the merger and the necessary coordination concerning

payment of the fee to be paid to Oberon under the terms of the M&A Engagement Agreement. In response, on August 19, 2025, Davies sent an email stating falsely "We have no M&A Agreement with Oberon."

25. On August 19, 2025, Oberon sent Davies a courtesy copy of the fully-executed M&A Engagement Agreement, together with the email sent by Davies on February 5, 2025 in which he negotiated the terms of that agreement. No further communication was received by Oberon from Davies.

26. Instead, on September 5, 2025, through legal counsel, PHP terminated the M&A Engagement Agreement and took the position that no compensation was due and owing to Oberon under the terms of that agreement.

FIRST CLAIM FOR RELIEF:
<u>BREACH OF CONTRACT</u>

27. Plaintiff repeats and realleges that allegations in paragraphs 1 through 26 of this Complaint.

28. The M&A Engagement Agreement is a valid contract existing between Plaintiff and Defendants.

29. Plaintiff performed all of its obligations under the M&A Engagement Agreement.

30. Defendants breached their obligations under the M&A Engagement Agreement by failing to pay Plaintiff compensation due and owing upon completion of the Assura merger transaction by which Defendants acquired all of Assura's real estate assets.

31. Plaintiff has suffered damages in an amount to be proven at trial and estimated, based upon public filings made by PHP and Assura, to exceed $40 million.

SECOND CLAIM FOR RELIEF
[IN THE ALTERNATIVE]:
*QUANTUM MERUIT* COMPENSATION
(against defendant Primary Health Properties PLC)

32. Plaintiff repeats and realleges that allegations in paragraphs 1 through 26 of this Complaint.

33. Plaintiff performed services for Defendant PHP in good faith.

34. Defendant PHP accepted those services and benefited from those services.

35. Plaintiff expected to be compensated from services rendered to PHP and PHP understood at all times that Plaintiff expected to be compensated for those services.

36. In the event that this Court determines that the M&A Engagement Agreement is not a valid agreement that covers PHP's acquisition of all of Assura's real estate assets via a tender offer, then Plaintiff is entitled to the reasonable value of the services rendered to PHP in connection with that successful tender offer.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. Compensatory damages in an amount to be proven at trial;

2. An award of the costs and disbursement of this action; and

3. Such other and further relief as the Court may consider equitable, just and proper.

Dated: December 1, 2025

                GUNGNIR LAW PLLC

By: *[signature]*
                Robert Knuts

P. O. Box 150
Greenport, NY 11944
Tel.: (631) 477-6300
Fax: (631) 803-4031
rknuts@gungnirlaw.com

*Counsel for Oberon Securities, LLC*

9